Esmerejildo Garcia GARZA, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–81–0064–CR.

Court of Appeals of Texas, Amarillo.

June 18, 1982.

Rehearing Denied July 8, 1982.

Discretionary Review Refused Sept. 15, 1982.

White, Self, Davenport & Bass, Erwin Davenport, Plainview, for appellant.

Marvin Marshall, Dist. Atty., Alfred Eugene Hernandez, Asst. Dist. Atty., Plainview, for appellee.

Before REYNOLDS, C. J., and COUNTISS and BOYD, JJ.

COUNTISS, Justice.

Appellant was convicted of aggravated kidnapping, Tex. Penal Code Ann. § 20.-04(a)(2) (Vernon 1974), and sentenced to eighty years in the penitentiary. By one ground of error, he contends the trial court denied his right to counsel. We affirm.

Appellant committed the offense for which he was convicted while he was an inmate in the Hale County jail. He and another inmate took a jailer hostage and attempted, unsuccessfully, to escape. During the episode, appellant stabbed the jailer and was shot by a deputy sheriff.

Counsel was appointed soon after appellant was indicted. Counsel immediately filed motions raising the issues of appellant's competency and sanity and the trial court ordered a psychiatric examination. Despite appellant's refusal to cooperate during the examination, the doctor concluded that appellant was competent and sane and reported his conclusions to the trial court.

Thereafter, at a pre-trial hearing, appellant told the trial court that he did not want to be represented by court-appointed counsel, because he was convicted when previously represented by court-appointed counsel. The trial court then gave appellant the first of many admonishments concerning the importance of representation by counsel and the dangers of self representation, and refused to dismiss the court-appointed counsel.[1] However, the court, after warning appellant that the case would be tried as scheduled, gave appellant an opportunity to determine whether his family could hire counsel.

When the case was called for trial appellant had not hired counsel, but refused to permit his court-appointed counsel to participate in the trial. After further admonishments, the trial proceeded with appellant

1. Appellant's comments concerning representation by counsel and the admonishments by the trial court are included as an appendix to this opinion.

conducting his own defense. His court-appointed counsel remained in the courtroom and available throughout the trial. Because appellant could not read, he permitted counsel to read to him the names of the persons on the jury panel and the court's charge and to assist in subpoenaing witnesses. Otherwise, he did not consult with his counsel.

■ After appellant was convicted and sentenced to eighty years in the penitentiary, he accepted court-appointed counsel for an appeal. We must determine whether the manner in which the trial court resolved the problems caused by appellant's refusal to accept court-appointed counsel at the trial denied appellant's right to counsel.[2]

In *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court said a criminal defendant has the right, under the Sixth Amendment to the United States Constitution, to conduct his own defense. However, before a trial court can permit self representation, it must advise the defendant "of the dangers and disadvantages of self representation so that the record will establish that 'he knows what he is doing and his choice is made with his eyes open.'" *Id.* at 835, 95 S.Ct. at 2541. When a defendant is adequately admonished and appears to understand the import of his decision, he is entitled to waive counsel and act as his own attorney.

■ Recently, in *Martin v. State*, 630 S.W.2d 952 (Tex.Cr.App.1982), our Court of Criminal Appeals clarified the application of the *Faretta* principle in Texas. Recognizing that its prior statements appeared to require more extensive admonishments than *Faretta*, the court held that Texas will not require more than *Faretta* demands.[3]

The ultimate question for an appellate court is whether the entire record in the case illustrates a defendant's knowledgeable exercise of his right to defend himself. The focus is on awareness, and the defendant's awareness as revealed by the entire record is to be considered, along with the form of the admonishments, when deciding whether he proceeded "with eyes open."

In *Martin*, after reviewing the entire record, the court concluded that the defendant was fully aware of his choice and that the trial court did not err in permitting self representation. In all respects, except two discussed later, the facts in this case are almost identical to the facts in *Martin*.

Here, as in *Martin*, appellant " 'advised that under no conditions will he want a court appointed attorney.' " *Id.* at 954, n. 6. In each case, appellant had experience with the criminal justice system and an appreciation of the situation in which he was placing himself. Also, in each case, appellant argued on appeal that the trial court's admonishments were inadequate. In *Martin*, the gist of the admonishments was that appellant would be held to the same standard and required to follow the same rules of procedure and evidence as an attorney, and would be at a disadvantage in the courtroom. As discussed above, the Court of Criminal Appeals concluded that the admonishments, when considered with the entire record in the case, revealed sufficient awareness to permit self representation.

■ We reach the same conclusion in this case. It is not necessary to rely on the entire record, as the court did in *Martin*, because the extensive admonishments and appellant's responses, set out in the appen-

---

2. Although there are elements of hybrid representation in this case, it is more closely akin to self representation cases and we treat it accordingly. If this were a hybrid representation case, appellant's argument would be immaterial. There is no right to hybrid representation, *Phillips v. State*, 604 S.W.2d 904, 907 (Tex.Cr.App.1979), but if it occurs the defendant is not entitled to admonishments about the danger of self representation. *Hawkins v. State*, 628 S.W.2d 71, 77 (Tex.Cr.App.1982).

3. In footnote 5 of *Martin*, the court summarizes the problem:

The *Faretta* opinion simply cannot reasonably be read to require that a trial judge spread upon the record all such information and data about an accused that might conceivably impugn his decision to represent himself; rather, its approach is to provide awareness of problems in undertaking so that the decision is not lightly made.

*Id.* at 954, n. 5.

dix, are sufficient, standing alone, to satisfy *Faretta*. However, when the admonishments and responses are considered with the rest of the record, especially appellant's prior experience with the criminal justice system, it is even more apparent that appellant knew exactly what he was doing and made his choice "with his eyes open." *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541. Thus, the trial court did not err in permitting self representation.

As we observed earlier, this case differs from *Martin* in two ways. First, this appellant obviously has little or no education. Although he did a credible job of presenting his version of the events in question, his venture ended in the disaster that usually accompanies self representation. Unfortunately for appellant, *Faretta* does not limit the right of self representation to the educated. The key is whether the defendant is aware of the burden he is assuming and this appellant was clearly aware.

Second, although appellant positively stated that he would represent himself, he was not enthusiastic about doing so. However, he was also unable to hire counsel and adamant in his refusal to permit court-appointed counsel to represent him. Thus, he gave the trial judge, who exercised great care and extreme patience, no choice except to proceed as he did. Appellant cannot escape punishment or receive another trial by refusing to observe the rules of our system of justice, if it is apparent from the record that he knew what he was doing. As has been frequently stated, "[a]n accused's right to represent himself or select his own counsel cannot be manipulated so as to obstruct the orderly procedure of the courts or interfere with the fair administration of justice." *Lyles v. State*, 582 S.W.2d 138, 141 (Tex.Cr.App.1979). Appellant's ground of error is overruled.

The judgment is affirmed.

BOYD, J., not participating.

### APPENDIX

1. Pre-trial Hearing, August 13, 1980:

THE COURT: * * * Now, Mr. Garza, are you telling the court that you just simply do not want a court appointed attorney to represent you, is that what you are saying?

THE DEFENDANT: At this point, yeah, I have to say this because what happened in the last court that I had and that lawyer that they appoint me in that other courtroom, I going to say this way, with that other judge, he didn't did what he was supposed to did, and that's why I put in an appeal, you know, and I don't want to go through this hassle again in this courtroom and have to put an appeal, again, you know.

And another thing, you know, I rather go ahead and go back to the penitentiary because I am already got forty years to serve anyway and I got some more time to do in the state of Colorado, too. And I want to wait and see if my—my parents told me that they was going to hire me a lawyer for that appeal case—for the case that I got an appeal. Okay. And if he going to take that case, I am pretty sure he would be able to take this case, too, you know. I don't know how long it's going to take, but that other case took about two years, I guess, maybe more, you know, before they took me to trial. One was because I escaped and the other one, it was because I was doing time in the state of Colorado and then they brought me back over here. And then I went along with them and I am not satisfied still. So, I just can't do it no more, you know, and I just going to have to wait and see. I haven't talked to my people.

* * *

THE COURT: All right. My question, though, is, will you permit Mr. Rohde as court appointed attorney to represent you in this trial on September 2nd?

THE DEFENDANT: Who, this man here?

THE COURT: Yes, sir.

THE DEFENDANT: No. I never did tell nobody that I wanted a court appointed lawyer from this—in this case. I never did told—

THE COURT: All right. Do you understand that the court is going to expect your

case to go to trial and it will be a jury trial on September 2nd, and if you are not going to let Mr. Rohde represent you, then you will have to represent yourself, do you understand that?

THE DEFENDANT: Well, I understand what you said, but I know for a fact that I don't know—I not able to represent myself, that's why I wanted to wait.

THE COURT: All right. That is the reason that the court would strongly advise you to permit Mr. Rohde to represent you.

THE DEFENDANT: Yes, sir. But I can't do this because what happened in this other case. I mean, I am over here doing forty years for something I ain't did.

\* \* \*

THE COURT: And, Mr. Garza, I feel like your case needs to be tried. I think that you are entitled to have an early trial, and, again, this court has the responsibility of setting your case for trial, and it's set number one on the docket and, again, if you do not choose to have an attorney to represent you, that is, if you are unable to hire an attorney, I have got Mr. Rohde appointed to represent you and if you are not going to permit him to represent you, then you will still have to go to trial.

And, Mr. Garza, first of all, let me explain to you that you are charged with a serious offense, it's a first degree felony offense, attempted capital murder—aggravated kidnapping. That carries a potential punishment if you are found guilty of ninety-nine years or life imprisonment in the Texas Department of Corrections.

I want you to understand that there are rules of procedure, there are rules of evidence that are difficult even for a lawyer and for courts and, Mr. Garza, I think that you are making a serious mistake if you do not permit Mr. Rohde to represent you. We have selection of a jury, we have voir dire examination where the attorneys who are trained in trial work ask jurors questions to determine jurors to be selected to serve as jurors in the trial of a case. There are rules of evidence, Mr. Garza. There are rules which—I say rules of evidence about

what is admissible in the trial of a case and what is not admissible, the responsibility that an attorney or a person representing himself has in making objections at the appropriate time on what can come into evidence. There are rules of procedure to follow. There is a responsibility to cross examine witnesses carefully. Attorneys are trained to do this. Complexities of the law in bringing out their side of the case. These are things that I do not feel that you know. These are things that Mr. Rohde is trained in. These are things that he can do to represent you in the trial of this case.

And, Mr. Garza, you will have the responsibility, if there are defense witnesses to be presented, to subpoena those witnesses yourself if you do not have Mr. Rohde to represent you. These are just some of the things and some of the problems involved when a person represents himself instead of letting an attorney represent the person. And I admonish you and tell you that I think you are making a mistake by not leteing [sic] Mr. Rohde represent you.

Mr. Rohde is an experienced trial attorney and can do just as good a job as anybody, very competent attorney and I want you to know that I think you are making a mistake if you don't let Mr. Rohde represent you.

THE DEFENDANT: Well, I think I am already—I already make a mistake in that other trial with an attorney—with a court appointed attorney and I don't want to do it again, you know. And I know I ain't got nothing against him because I don't know him at all. Just the first time when he was doing something over here I didn't even know what was going on.

But, anyway, I am pretty sure he is a professional lawyer, probably, but he is not that—appointed, I am talking about. The thing is that I just not going to be satisfied with an attorney that I going to hire for my own and pay my own, because I know I am pretty sure I know how things going.

\* \* \*

THE COURT: I think what you are not understanding is that I am going to expect your case to go to trial.

THE DEFENDANT: That's—like I say, you know, go ahead and trial me, you know. I know I can't represent myself, you know, but I ain't going to accept nobody else. I wish I could not even accept you, you know, to judge me, but I going to have to, you know, because I might going to have to if nothing come down before that day, you know, you got set for trial, you know.

*       *       *

THE COURT: Well, if you make contact about hiring an attorney, you need to tell that attorney to contact me immediately.

Now, Mr. Rohde, I am going to order that even though Mr. Garza does not desire to have a court appointed attorney represent him, that you be present during the trial, that you be available to Mr. Garza if he has any questions or requests any consultation for legal advice. Also, in the event that Mr. Garza were to change his mind or something for legal representation by you as his court appointed attorney, then I will expect you to do that. If Mr. Garza does not and chooses to represent himself, then I would ask that you just be present and be available to him.

*       *       *

THE DEFENDANT: I want to tell him before he goes out of the room, you know, that I don't want to have nothing to do with him at all.

THE COURT: All right, sir. You do not have to. I am just asking him to be available if you do.

THE DEFENDANT: Okay. I don't want him to ask me nothing or nothing at all.

THE COURT: That's your choice.

*       *       *

(Hearing adjourned.)

2.   Trial, September 2, 1980:

THE COURT: * * * Now, Mr. Garza, the jury is to report in this courtroom in approximately forty minutes to start the trial of your case. So, at this time let me inquire as to, first of all, whether or not you have hired an attorney or whether or not you have done anything about hiring an attor-ney. Would you tell me what you have done, if anything, in that regard?

*       *       *

THE DEFENDANT: No. I could not hire one and I don't want a court appointed lawyer either.

THE COURT: All right. So, you want to represent yourself?

THE DEFENDANT: No, I don't want it, you see, but I couldn't do much.

THE COURT: Well, Mr. Garza, you are either going to have to represent yourself—

THE DEFENDANT: Well, this is what I say. So, this is what's going to have to happen. It's not that I want it, but it's just the way it have to happen because I am already over here with this case and it's a heavy case and that's it.

*       *       *

THE COURT: All right. Mr. Garza, you are going to represent yourself, is that correct?

THE DEFENDANT: Well, you see, I don't have any other choice. That's what's going to have to happen.

THE COURT: The only other choice you have got is to have a court appointed attorney to represent you.

THE DEFENDANT: Yes. I am going to represent myself, then.

*       *       *

THE COURT: All right, sir. Mr. Garza, since you have been through two jury trials as a defendant—

THE DEFENDANT: Through one jury trial and this one—oh, yeah. Two. That's right. One here and one in Colorado.

THE COURT: —prior to this trial that we are fixing to start today, then you may be aware of some procedural matters. I don't know. But let me go over a few things with you before we start the trial today.

*       *       *

THE COURT: All right. All right. Mr. Rohde is your court appointed attorney. I realize you—we have gone over this very thoroughly that you do not want him or any

other court appointed attorney to represent you. However, I am ordering that Mr. Rohde be on standby, that is, he will be in the courtroom, not necessarily at the counsel table, but he will be where you can talk to him or consult with him if you want to. If you don't want to, that's your choice.

THE DEFENDANT: It's like I say, you—the court can do whatever they want to do, I am just going to be here and tell the people how that happened and why that happened and whatever it's going to be.

THE COURT: All right. And, Mr. Garza, if you are going to try your case yourself, you understand there's certain rules of procedure and certain rules of evidence.

THE DEFENDANT: That's too bad.

THE COURT: And we are going to follow those rules.

THE DEFENDANT: That's too bad, sir, because, see, I almost got killed.

\* \* \*

THE COURT: There are certain rules of procedure we are going to follow in this courtroom.

\* \* \*

THE COURT: All right, sir. In other words, you want the jury to set your punishment if you are found guilty?

THE DEFENDANT: Yes, sir.

THE COURT: All right. And do you understand that we are fixing to start a jury trial and that you do not have to have a jury trial if you don't want to, I just point that out to you so that you will know that so, again, I take it from what you have said and what you have said in the courtroom that you do want a jury trial, is that correct?

THE DEFENDANT: Yes, sir. That's correct. I want a jury trial.

THE COURT: All right. Mr. Garza, let me also advise you that under the 5th Amendment of the United States Constitution that you do not have to testify and if you don't testify, that can and would not be held against you. Also, the Court would instruct the jury that they cannot consider that for any purpose if you were not to testify.

Let me further advise you that if you were to testify, then anything incriminating could and would be held against you. Also that the state's attorney, Mr. Marshall, would have the right to cross examine you and ask you questions about anything relevant to this case. I point that out to you before we even start the trial because if you are going to be representing yourself, I want you to keep that in mind as we go through the trial so that you will understand your 5th Amendment Right under the United States Constitution. Do you understand that?

THE DEFENDANT: There's not much I can do, just trying to do my best.

\* \* \*

THE COURT: All right. I will have Mr. Rohde on standby, that is, where you were to change your mind or if you were to have some question that you wanted to ask Mr. Rohde about procedure or evidence or anything else connected with the trial he will be there if you want to and if you want to at any time if you will simply raise your hand I will permit you to state that to the Court and I will, if necessary, take a short recess so that you can talk with Mr. Rohde, if you want to. I am not forcing Mr. Rohde on you, I am simply pointing that out to you, do you understand?

THE DEFENDANT: I understand.